MOBILE TOWING & WRECKING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9080, 17824. Promulgated February 28, 1930.

*George E. H. Goodner, Esq.,* and *Walter K. Smith, Esq.,* for the petitioner.

*James L. Backstrom, Esq.,* for the respondent.

OPINION.

Trussell: The record of this action clearly shows that the Hartwell manipulations of the petitioner's cash and credit for his personal benefit began some years prior to 1915, and that it was known to the other stockholders, and at least outwardly acquiesced in until 1915, when it may be presumed that the other stockholders felt or determined that Hartwell was getting beyond the limit of reason in said manipulations and determined to stop the same, and that they thereupon arrived at an adjustment, accepting the separation of Hartwell from the business of the corporation, the turning over to the corporation of all of his assets, including capital stock of the petitioner company, and setting up the agreed amount of the debt on the corporation's books as an account receivable, and that they properly carried said account forward from year to year as a debt owing to the company, and that it then appeared to the company and its remaining stockholders that the securities and property rights assigned by Hartwell would fully liquidate his indebtedness. Convincing evidence of this is shown by the fact that in 1917, when Hartwell negotiated a sale of one of the company's tugboats, the company agreed to allow him a commission of $5,000 on the sale and paid him $3,000 of that amount in cash, only crediting $2,000 upon his indebtedness. Much litigation followed in the efforts of the

petitioner to acquire possession of the Hartwell stock and other property rights assigned by him to the petitioner and the settlement of this litigation continued until 1924. During this period, as a result of litigation and other settlements made by the petitioner, the petitioner realized recoveries as follows:

Credit balance in Hartwell's account on petitioner's books (1915)__ $464.18
Commission allowed on the sale of tug boat (1917)_____ 2,000.00
Net cash realized on disposition of Hartwell collateral (1918)_____ 21,043.00

      Total cash recovery_____ 23,507.18

Decrease of capital liabilities were made as follows:

1918, 61 shares of petitioner's stock_____ $6,100.00
1922, 25 shares of petitioner's stock_____ 2,500.00
1924, 45 shares of petitioner's stock_____ 4,500.00

      Total of reduced stock liability_____ 13,100.00

The revenue agent found in his revised balance sheet a book surplus of December 31, 1918, of $78,565.37. By the liquidation of 131 shares of the company's stock 131/384 of said 1918 surplus was saved to the company and its surviving stockholders in the amount of $26,802.22. These items total $63,409.40. We are, therefore, of the opinion that the Hartwell account as it stood in 1915, in the amount of $61,452.60, has been substantially liquidated in full and therefore that it was a good account receivable during the years 1919 and 1921 for its full amount less the cash recoveries prior to December 31, 1918, in the total of $2,464.18, and further reduced by the proper credits to be made upon said account resulting from the retirement of 61 shares of petitioner's stock.

When, in 1916, petitioner undertook under the state statutory provisions to exercise its lien upon the Hartwell stock it held an auction sale and there bid $2,000 for such stock and thereupon credited the Hartwell account with the said $2,000. Later, it acquired actual physical possession of 61 shares of said stock and, pursuant to article 862 of Regulations 45 and 62, such shares of stock must, for the purpose of invested capital, be regarded as having been retired and canceled prior to the beginning of the taxable years here under consideration. Hartwell was properly entitled to a credit upon his account for at least the par value of the stock assigned by him and, although no further credit was made by the petitioner, we must now consider that the thing which should have been done was done, and, $2,000 having been credited to the Hartwell account in 1916, there must now be an additional credit of $4,100 on account of the retirement of said 61 shares of stock. Therefore, at the beginning of the year 1919 the Hartwell account

must be regarded as having been reduced on account of the retirement of said stock in the amount of $6,100.

In regard to the second issue relating to the reduction of the invested capital for 1919 by the effective average of the income and profits taxes for 1918, it appears that this reduction of invested capital has been made in accordance with the regulations of the Treasury Department existing in that year and, under the provisions of section 1207 of the Revenue Act of 1926, the action of the respondent must be found to have been in accordance with the provisions of law and regulations relating thereto.

With respect to petitioner's claim for assessment under the provisions of sections 327 and 328 of the Revenue Acts of 1918 and 1921, we have examined the data furnished by the record and have arrived at the conclusion that such facts as shown in reference to salary payments and the unusual deduction for repairs in the year 1920 are not such as to prove an abnormality of income for the years 1919 and 1921, and the claim for special assessment must, therefore, be rejected.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*

MARQUETTE, PHILLIPS, and MURDOCK concur in the result only.